# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN DISTRIBUTING COMPANY, LLC,<br><br>       Plaintiff,<br><br> v.<br><br>PAUL CORBETT,<br><br>       Defendant. | Case No. 18-cv-2231-BAS-BGS<br><br>**ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[ECF No. 2]** |

Presently before the Court is Plaintiff Sun Distributing Company, LLC's Motion for Temporary Restraining Order and Preliminary Injunction. ("TRO," ECF No. 2.) Also before the Court is Defendant Paul Corbett's Response. ("Opp'n," ECF No. 12.) The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** in part Plaintiff's Motion for Temporary Restraining Order ("TRO") and temporarily **ENJOINS** Defendant from divulging, using, disclosing, or making available to any third person or entity Plaintiff's trade secrets, or using any trade secrets for the purpose of directly or indirectly competing with Plaintiff.

## I. BACKGROUND

Plaintiff "is a distribution company that works with major national logistics

– 1 –                               18cv2231

companies to provide last mile distribution to residences and businesses in California." (TRO 2.) Plaintiff "accepts deliveries of furniture, sports equipment, appliances, parcels, and other goods from the national companies and delivers the goods to their final destination in an economical and reliable manner." (*Id.*) Plaintiff also distributes publications for newspaper and magazine publishers "and assists businesses and other organizations with marketing endeavors by distributing flyers, brochures, door hangers, menus, and product samples." (*Id.*) Defendant worked for Plaintiff for over twelve years and served as Plaintiff's general manager from 2014 to 2018. (*Id.* at 5.) Defendant resigned on August 8, 2018. (*Id.* at 1, 5.) Defendant now works for Pacblue, a company that "distributes free newspapers and other print media for publishers in California." (Opp'n 4.)

In 2016, the Parties entered into an Employment Agreement, which contains a section on confidential information. (*See* ECF No. 2-2, at 30.)[1] It generally provides that Defendant will not divulge any of Plaintiff's trade secrets and will not use any trade secret for purposes of competing with Plaintiff. (*Id.* at ¶ 7.) On September 12, 2018, Mr. William Thomas, Plaintiff's CEO and owner, received an inadvertent email from one of Plaintiff's customers, David Mannis, who is a publisher.[2] (TRO 8; *see also* ECF No. 2-2, at 39.) The email is addressed to Defendant but apparently all emails sent to Defendant's email account after his

---

[1] The Employment Agreement is attached to a declaration by Mr. William J. Thomas. Defendant objects to various portions of Mr. Thomas' declaration, asserting the declaration lacks foundation, is irrelevant, forms an improper legal opinion, and is hearsay. (*See* ECF No. 12-2.)

Defendant's first two objections relate to Mr. Thomas' representations about the Employment Agreement. The Court has not considered Mr. Thomas' analysis of the Agreement but has reviewed the Agreement on its own accord. As to the remainder of the objections, the Court finds Mr. Thomas, as Plaintiff's CEO and owner, has personal knowledge of the facts or allegations he recites, thus, he has laid a proper foundation for the declaration. Mr. Thomas also offers no improper legal opinion. Finally, the Ninth Circuit has held when a court considers a request for preliminary injunction, it "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). For these reasons, the Court **OVERRULES** Defendant's objections.

[2] Although Plaintiff redacted Mr. Mannis' full name in its papers, Defendant provided the name in his declaration so the Court uses it here.

resignation were automatically forwarded to Mr. Thomas. In the email, Mr. Mannis says, "Paul, Thanks for your call yesterday," and provides Defendant with information "to prepare to take on [Mr. Mannis'] account." (ECF No. 2-2, at 39.) This information includes a "do not deliver" list, distribution maps, and circulation information. (*Id.*) Mr. Mannis also says: "[a]s agreed, my rate will be…" indicating the two had discussed a rate Defendant would charge for Mr. Mannis' business. Plaintiff alleges the email is evidence of Defendant's efforts to solicit Plaintiff's customers. (TRO 8.) Plaintiff filed a complaint for misappropriation of trade secrets under federal and California law, as well as breach of contract. Plaintiff now moves for a temporary restraining order which orders Defendant to abide by trade laws and the Employment Agreement.

## II. LEGAL STANDARD

The standard for a TRO and preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)). A TRO's "underlying purpose [is to] preserv[e] the status quo and prevent[ ] irreparable harm" until a preliminary injunction can be held. *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

## III. ANALYSIS

### A. <u>Preliminary Matters</u>

Defendant first argues the Court lacks subject matter jurisdiction over this case. There are generally two types of subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. §

1332.³ Federal question jurisdiction exists with "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)). In the absence of a complaint setting out the basis for jurisdiction, the court lacks the jurisdiction to grant a temporary restraining order. *Camillos v. U.S. Bank Nat'l Ass'n*, No. 5:11-CV-5228 EJD, 2011 WL 5122619, at *2 (N.D. Cal. Oct. 27, 2011).

Plaintiff asserts that federal question jurisdiction exists under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836. ("Compl.," ECF No. 1, ¶ 3.) This statute provides: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Defendant argues Plaintiff has not provided evidence "how its allegedly confidential trade secrets relate to the[ ] components of its business operations, or any product or service that is used or intended for use in interstate or foreign commerce." (Opp'n 6.)

The Court disagrees. Plaintiff has pled it distributes publications for newspapers and magazine publishers across Southern California and into Mexico. (Compl. ¶ 12.) Plaintiff's trade secrets are related to these publications. (*See id.* ¶ 15 (listing trade secrets).) Therefore, Plaintiff has pled the jurisdictional element of DTSA on the face of its Complaint. It is also irrelevant that Defendant's current

---

³ Although Plaintiff checked the "diversity of citizenship" box on its civil cover sheet, this appears to have been in error because Plaintiff does not allege in its Complaint that diversity exists, and Defendant also notes there is no diversity. The Court therefore only considers federal question jurisdiction.

employer does not distribute products outside of California. (Opp'n 6.) All that is required is for Plaintiff to plead its trade secrets are used or intended for use outside of California, which it has done. The Court therefore finds it has subject matter jurisdiction over this case.

### B. <u>Temporary Restraining Order</u>

The Court now turns to the requirements of a temporary restraining order.

#### 1. **Likelihood of Success on the Merits**

Plaintiff must demonstrate a likelihood of success on the merits of its claims, which are (1) misappropriation of trade secrets in violation of the DTSA and California's Uniform Trade Secret Act ("CUTSA"), and (2) breach of contract.

##### a. **Trade Secret Misappropriation**

To state a claim for misappropriation of trade secrets under CUTSA, a plaintiff must allege: (1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (citation omitted). A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. *See* 18 U.S.C. § 1836.

###### i. **Trade Secret**

In establishing the existence of a trade secret, "[a] plaintiff need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-1409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted), but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin*, 877 F. Supp. 2d at 988 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Both the DTSA and CUTSA define a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-
>
>   (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
>   (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d). Plaintiff lists the trade secrets at issue in this case as:

> confidential know-how and proprietary business methods and procedures (including the development of delivery schedules, routes, "Do Not Deliver" lists), customer lists and contact information, the identity of key contact personnel and decision makers, price lists and structures, customer requirements (including delivery needs, schedules, routes, and "Do Not Deliver" lists), service providers and drivers and pricing structure, employee information and compensation structure, and other proprietary business, operating, and financial information.

(TRO 13; Compl. ¶ 9.) Defendant argues this information does not qualify as trade secrets. (Opp'n 8.)

Plaintiff attests it has spent "considerable time, effort, and resources" developing its trade secrets and therefore the information is not readily known or ascertainable. (TRO 5.) In developing its customer list, Plaintiff first identified potential customers who may require distribution services and then formed relationships with the decision makers at those companies. Plaintiff maintains the

relationships by learning the customers' needs and preferences, as well as generating a "do not deliver" list so that it does not bother those who wish to remain off distribution routes. (*Id.*) Plaintiff then develops routes and schedules to efficiently service its customers. (*Id.* at 6.)

Plaintiff has demonstrated that its customer list has value and is not generally known or readily ascertainable through proper means. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (finding a customer database qualifies as a trade secret because the database has "potential economic value because it allows a competitor . . . to direct its sales efforts to those potential customers"); *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("Customer information such as sales history and customer needs and preferences constitute trade secrets"); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997) ("[A] customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested." (citation omitted)).

Defendant argues some of alleged trade secret information in fact "belongs to the publisher-customers themselves," and therefore the information is not secret and is readily ascertainable because the customers could share the information with competitors. (Opp'n 7.) But, it is a given that in any case, the customers themselves will have access to their own information. The value to the customer list is in the completeness and details of the list; the fact that each individual customer has access to its own information does not make Plaintiff's list of customers worthless. Further, Plaintiff has established it used reasonable measures to protect its information from the public. Plaintiff attests it has its "employees sign employment agreements with provisions to maintain the confidentiality of Trade Secrets [and] has a security system designed to protect its proprietary, confidential, and trade secret information." (TRO 13.) *See Morlife*, 56 Cal. App. 4th at 1523 (finding reasonable measures where

customer list was stored on a computer with restricted access and company instructed employees to maintain confidentiality); *Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288 (1990) (finding reasonable measures where customer list was distributed to employees on an "as needed basis" and employees were directed to keep it confidential). This requirement is therefore met.

Finally, Defendant's argument that "publication names and publisher contact information for most free publications are publically available" and therefore not protectable is unavailing. (Opp'n 7.) While it is true that Defendant could surely find a list of all publishers who may be interested in a publication distribution service, this is a far cry from knowing Plaintiff's specific customer list and details about each customer's preferences. The California Court of Appeals succinctly summed up the distinction:

> [C]ourts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories. On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers.

*Wanke, Indus., Commercial, Residential, Inc. v. Keck*, 209 Cal. App. 4th 1151, 1175 (2012) (internal citations and quotations omitted). Here, although publication names and contact information might be public knowledge, it is clear Plaintiff has put in time and effort to develop other specific information, inter alia, its customer list, preferences, pricing structures, and "do not deliver" list. Thus, this information is protectable.

In sum, the Court finds Plaintiff has established it has protectable trade secrets.

/ / /

/ / /

### ii. Misappropriation

Misappropriation is defined as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
> > (A) Used improper means to acquire knowledge of the trade secret; or
> > (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
> > > (i) Derived from or through a person who had utilized improper means to acquire it;
> > > (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
> > > (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> > (C) Before a material change of his or her position knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or by mistake.

Cal. Civ. Code § 3426.1(b).[4] Misappropriation under the DTSA is nearly identical. *See* 18 U.S.C § 1839(5).

Plaintiff argues it has established misappropriation through both the "acquisition" and "use" methods. (TRO 14.) There is no question that Defendant had access to Plaintiff's trade secrets through his position as general manager. But

---

[4] The plaintiff "must plead facts showing that [defendant] had a duty not to use the information in the way alleged." *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017). Plaintiff has done this by producing the Employment Agreement. *See Blindlight, LLC v. Cubbison*, No. CV17-3497 JAK (PLAx), 2017 WL 4769460, at *11 (C.D. Cal. July 3, 2017) (finding that confidential agreement signed by the defendant is sufficient to show the defendant "should have known that the information he acquired while an employee of [plaintiff] was 'acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use,' as required to show misappropriation" (quoting Cal. Civ. Code § 3426.1).)

Defendant argues he did not use the information or acquire it by improper means. From Defendant's point of view, he did nothing wrong: Mr. Mannis learned Defendant had left the company, requested Defendant contact him, and then voluntarily provided him with confidential information as it related to Mr. Mannis' company. (*See* "Corbett Decl.," ECF No. 12-1, ¶¶ 10–15.) "[O]ne who passively receives a trade secret, but neither discloses nor uses it, would not be guilty of misappropriation." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010). But the Court finds Defendant did not only passively receive the information. Regardless of who first contacted who, Defendant and Mr. Mannis discussed transferring Mr. Mannis' business (using Plaintiff's maps and circulation data) over to Defendant, and Mr. Mannis specifically mentioned a rate previously discussed and said he would not pay more than what he paid Plaintiff. Defendant therefore likely proposed a rate he would charge Mr. Mannis in an effort to convince Mr. Mannis to transfer his business to Defendant. Defendant only knew Plaintiff's rates and distribution plans due to his position as general manager. Thus, Defendant "used" Mr. Mannis' customer and pricing information.[5]

The final requirement is that the defendant acquired knowledge of the trade secret information through improper means. "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain

---

[5] Further, Defendant points out that he has known Mr. Mannis for twelve years, the two are friends, and Defendant therefore did not use trade secrets to obtain Mann's name or contact information. (Corbett Decl. ¶ 13.) This Court, as well as other courts, have found this argument unavailing because regardless of Defendant's relationship with the client, the relationship formed through Defendant's employment with Plaintiff. Trade secret protection extends to information about business contacts an employee makes while working for his employer. *Can We Studios LLC v. Sinclair*, No. 13-6299 PSG (FFMx), 2013 WL 12120437, at *5 (C.D. Cal. Nov. 20, 2013); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1525 (1997) ("[I]information developed by an employee concerning the employer's customers represents an investment of time and money *on the part of the employer*, justifying a grant of trade secret protection against exploitation by the former employee"). Simply because Defendant became friends with a client and maintained a relationship with him does not mean Defendant can use information he learned while employed by Plaintiff in violation of trade laws.

secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(a). This requirement is met. As Plaintiff's general manager, Defendant had a duty to maintain the secrecy of the information even after he left the company. Defendant knew the information Mr. Mannis provided was a trade secret and he was under a duty not to use that information. "[I]f a reasonable person in the position of the actor would have inferred that *he or she was in wrongful possession* of another's trade secret, the actor is subject to liability for any subsequent use or disclosure." *Silvaco*, 184 Cal. App. 4th at 226.

The Court notes that the direct evidence of misappropriation at this stage is small: only one email. However, as another court has pointed out:

> [M]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences . . . that it is more probable than not that what plaintiffs allege happened did in fact take place.

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, No. C-04-1268 VRW, 2007 WL 2572225, at *5 (N.D. Cal. Sept. 5, 2007) (quoting *Q-Co Indus., Inc. v. Hoffman*, 625 F. Supp. 608, 618 (S.D.N.Y.1985)). This is true here. Plaintiff's allegations of misappropriation go further than only alleging Defendant has been improperly communicating with Mr. Mannis. Plaintiff alleges Defendant was negotiating a new business opportunity with another one of Plaintiff's clients while employed by Plaintiff, and, after Defendant left, he contacted that client seeking the business opportunity for himself. (TRO 9.) This allegation is based on "information and belief," (*id.*), but the Court finds it plausibly pled based on the evidence of Defendant's contact with another client, Mr. Mannis. In sum, through a combination of direct and circumstantial evidence, Plaintiff has met its burden in establishing Defendant acquired trade secret information through improper means.

The Court finds Plaintiff has sufficiently alleged a likelihood of success on the merits for its trade secret misappropriation claim.[6]

### b. Breach of Contract

To state a claim for breach of a written contract, a plaintiff must plead facts that establish "(1) existence of the contract, (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). The Court finds Plaintiff's breach of contract cause of action is preempted by its CUTSA claim.

Section 3426.7 of the CUTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). In analyzing this, courts focus on "whether [the] claims are not more than a restatement of the same operative facts supporting trade secret misappropriation. . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Convolve, Inc. v. Compaq Comp. Corp.*, No. 00 CV 5141(GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (internal quotations omitted) (applying California law).

Various courts have held that CUTSA may supersede certain claims "where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-694-LHK, 2012 WL

---

[6] Plaintiff alleges its compensation structure for its employees is a trade secret and that Defendant knows of the structure. (TRO 7.) But Plaintiff makes no allegations that Defendant has acquired or used the compensation structure in violation of trade laws. Plaintiff does allege Defendant attempted to solicit one of Plaintiff's employees after Defendant resigned, (*id.* at 10), but does not allege Defendant used the trade secrets in any way. Thus, Plaintiff has not proven Defendant misappropriated this specific trade secret. This is irrelevant because Plaintiff has met its burden in showing likelihood of success on the merits of misappropriation of at least <u>some</u> trade secrets.

6160472, at *3 (N.D. Cal. Dec. 11, 2012) (collecting cases). A claim is not preempted, however, if the plaintiff asserts "*some other basis in fact or law* [than misappropriation] on which to predicate the requisite property right," *Silvaco*, 184 Cal. App. 4th at 238–39; *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,* No. C 08–3931, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) (finding a claim is not preempted if based on facts that are "similar to, but distinct from" those underlying the misappropriation claim).

Here, Plaintiff's breach of contract claim has no basis other than its misappropriation claim. Plaintiff argues Defendant breached the confidentiality provision of the Employment Agreement "by using [Plaintiff's] Trade Secrets, including its customer lists, needs, and pricing structures, to directly compete with [Plaintiff]." (TRO 15; *see also* Compl. ¶ 42.) There is no material distinction between the trade secret misappropriation claim and the breach of contract claim. The breach of contract claim is preempted and therefore Plaintiff is not likely to succeed on the merits of this claim.

In determining whether injunctive relief is proper, the first factor (whether the plaintiff is likely to succeed on the merits) is "the most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015.) Because the Court finds Plaintiff has not established this factor, it "need not consider the remaining three [factors]." *Id.* (citation omitted). The Court **DENIES** Plaintiff's request for a TRO on its breach of contract claim and proceeds to analyze the remaining three factors for Plaintiff's misappropriation claim.

### 2. Likelihood of Irreparable Harm

Plaintiff asserts it "is in immediate danger of losing valuable business, customer relations, opportunities, profits, and goodwill" if Defendant is permitted to use Plaintiff's trade secrets. (TRO 15.) "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d

597, 603 (9th Cir. 1991) (citing *L.A. Mem'l Colliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). However, "an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm." *Pac. Aerospace & Elec., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) (quoting *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92–93 (3rd Cir. 1992)). "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales*, 240 F.3d at 841.

Here, Plaintiff has established it will lose customers and goodwill through Defendant's actions, which shows there is a likelihood of irreparable injury if Defendant is not enjoined. This satisfies the burden with respect to this factor.

### 3. Balance of Equities

"To qualify for injunctive relief, Plaintiff must establish that 'the balance of the equities tips in [its] favor.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). A court has the "duty . . . to balance the interests of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The damage to Plaintiff, as noted above, is the loss of customers and goodwill. Defendant argues the damage to him is that he would "be precluded from fairly competing in the industry that has formed the basis of his livelihood for three decades." (Opp'n 9.) Defendant is unfairly characterizing the scope of what Plaintiff requests. Defendant is not precluded from working in his desired industry, he is only precluded from using Plaintiff's trade secrets in doing so. This is only a small harm, compared to Plaintiff's irreparable harm of loss of business and goodwill. The balance of equities tip in Plaintiff's favor.

### 4. Public Interest

"The public interest is served when [a] defendant is asked to do no more than abide by trade laws and the obligations of contractual agreements signed with [his]

– 14 –

18cv2231

employer. Public interest is also served by enabling the protection of trade secrets." *Henry Schein*, 191 F. Supp. 3d at 1078 (citing *Bank of Am., N.A. v. Lee*, No. CV 08–5546 CAS (JWJX), 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008).) Accordingly, the public interest is served in ordering Defendant here to abide by trade laws and protect Plaintiff's trade secrets.

## IV. CONCLUSION

In sum, the Court finds Plaintiff has met its burden in establishing it is entitled to partial injunctive relief. The Court **GRANTS** Plaintiff's motion for a TRO with respect to its misappropriation claim and **DENIES** Plaintiff's motion for a TRO with respect to its breach of contract claim.

Accordingly, the Court **ENJOINS** Defendant from divulging, using, disclosing, or making available to any third person or entity Sun Distributing's trade secrets, or using any trade secrets for the purpose of directly or indirectly competing with Sun Distributing. Sun Distributing's trade secrets include but are not limited to, Sun Distributing's confidential know-how and methods developed and/or acquired by Sun Distributing, its proprietary business methods and procedures, customer lists and contact information, key contact information, price lists and structures, customer requirements, service providers and pricing structures, employee lists and compensation structures, and other proprietary business, operating, and financial information.

The Court **ORDERS** Defendant to show cause as to why the Court should not grant Plaintiff's motion for a preliminary injunction. The Court **ORDERS** the Parties to appear on October 22, 2018 at 3:00 p.m. in Courtroom 4B for oral argument. The Parties should be prepared to discuss Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

**DATED: October 12, 2018**

Hon. Cynthia Bashant
United States District Judge